STATE OF WEST VIRGINIA *v.* F. W. SIBERT

(No. 7077)

Submitted March 1, 1933.   Decided March 7, 1933.

(Rehearing denied June 2, 1933)

718

*Lilly & Lilly*, for plaintiff in error.

*H. B. Lee*, Attorney General, and *W. Elliott Nefflen*, Assistant Attorney General, for the State.

WOODS, JUDGE:

Defendant, who was found guilty of involuntary manslaughter, and sentenced by the intermediate court of Kanawha county to one year's imprisonment in the county jail, and fined, complains of the judgment of the circuit court of said county in refusing a writ of error.

The accident, in which Donald Lee Bush of Huntington, W. Va., met his death, and out of which this criminal proceeding arose, occurred on the Midland Trail, a few miles east of St. Albans, about 1:30 a. m., February 12, 1930. The highway is substantially straight for quite a distance in each direction from the point of the accident. The hard surface is twenty feet wide. Defendant and a young lady were returning to Charleston, in a Buick coupe; and Bush, with two companions, to Huntington. The latter were in a Maxwell touring car—all in the front seat, with Bush in the middle.

The surviving occupants of the touring car testified that the defendant, driving at the rate of 55 to 60 miles per hour, drove the coupe two feet over the center line and struck their car, between its center and rear. Defendant places his speed at 35 miles per hour; and states that the touring car was over on his side, and that the coupe was hit between the left front door and the left front wheel—about widways.

Witness Manseur, who was awakened by the crash, testified that he saw a scar on the road beginning about one foot south of the center line, and extending across the center in the direction of the Buick, which had crossed the road and ran into a bank one hundred thirty feet distant. The chief of police and a justice of the peace from St. Albans arrived at the scene of the accident around three o'clock. They testified that owing to the heavy frost they were able to see certain "scars" or markings on the roadway, which indicated that a portion of the Buick was on the wrong side at the time of the impact. The justice stated that one could see rubber marks eighteen to twenty-four inches in length where the touring car had slid before it commenced turning; and that such marks were eighteen to twenty-four inches north of the center line. The policeman testified that there was considerable dirt, grease, splinters, and things like that, at the point of impact; and that there was an impression in the hard surface, eight inches north of the center line, where the left front wheel of the Buick had dropped down, after the tire and rim had been torn off. The touring car went something like 81 feet, having rolled practically all that distance.

The night mechanic of the Grove Motor Company, who towed the Buick in, and the mechanic who worked on the car, testified as to its condition. The latter was unable to swear in his opinion that the Buick was struck, stating that in moving forward the coupe either struck or was struck by some object. It appears that the left fender of the Buick was bent where it connects with the running board; and that the running board was bent; a dent in the door and back fender; tire and rim torn off the left front wheel, and the wheel bent back sideways; the frame bent where wheel connects with steering wheel. And, according to the defendant, the touring car was so badly demolished that one could not tell anything about what happened from an examination of it. There was some evidence, although not very substantial, intimating that the occupants of each car may have been drinking. On this state of the record, in the absence of other error, the jury verdict is final. *State* v. *Winans,* 100 W. Va. 418, 130 S. E. 607.

It appears from the record that a crude chalk drawing, purporting to show various points and objects, including the

road at the point of the accident, as well as east and west thereof, was placed on the blackboard back of the witness stand prior to the commencement of the trial. This drawing, over defendant's objection and exception, was referred to by the prosecuting attorney in his opening statement, and later in the examination of state's witnesses. The prosecutor, in his initial reference thereto, told the jury that it was ''a rough sketch showing approximately the point of accident''. The sketch, as shown in a photograph thereof, made part of bill of exceptions No. 3, shows a reverse curve (right to left) some distance to the west of the point of the accident, while the two photographs (introduced in evidence) show a general curve to the left. Upon cross-examination of state's last witnesses (and after the introduction of the first photograph in evidence) as to whether or not, in view of the discrepancy, the illustration was a true one, the prosecuting attorney stated that the plaintiff had never so claimed. Whereupon, defendant's counsel replied: ''The Court ruled that it would be admitted. We now move that the illustration used by the state in the examination of its witnesses go out and the jury directed not to consider it.'' The Court: ''If there is any variance between them, the jury will disregard it.'' Counsel for defendant: ''That was the point of our objection when we made it.''

The record shows no offer to admit the drawing in evidence, and the same was not admitted, unless the above colloquy between counsel and the court can be construed as an admission to that effect on the part of the court. The discrepancy in the road bend seems to have been the reason for the objection of the defendant as indicated by his counsel's last quoted statement. However, it is contended in this Court that palpable error was committed by the trial court in not specifically directing the jury to disregard the drawing. Counsel asserts that such drawing attempts to definitely fix the point where the cars came together, and the routes taken by them after the impact. We do not see that this question was raised in the court below. However, both sides seem to be very well agreed on the position of the cars immediately after the accident. Their position at the moment of impact, with reference to the center of the road, was about the only fact in dispute, so far

as the map was concerned. The relative distances were testified to by the several witnesses. So the jury was left to determine the position and the speed of the cars at the time of the accident. In cases involving issues of fact, a party is of right entitled to make an opening statement to the jury, and may outline what he expects to prove, unless it is manifest that such proof is incompetent. 38 Cyc. 1475; 2 R. C. L. 410. Courts. should not allow matters foreign to the issue. The privilege allowed to counsel in this regard is largely within the discretion of the trial court, and subject to review on appeal where it appears that there is a manifest abuse of its exercise. It is generally recognized that a map or diagram may be admitted for use in connection with the testimony of a witness, to enable him to explain matters as to which he testifies, although it would not be admissible as independent evidence. 22 C. J. 913, and cases there cited. So, it logically follows that the court, in its discretion, may permit the prosecuting attorney in his opening statement to exhibit a sketch showing the surroundings of the scene of the crime. 16 C. J. 889; *Coats* v. *State*, 101 Ark. 51, 141 S. W. 197. If there was anything of an evidentiary nature on the map which defendant deemed prejudicial, he should have pointed it out to the court by timely objection. The defendant, under the facts in this case, could not have been hurt by the use of the blackboard sketch.

Defendant insists that is was error to refuse his instruction No. (blank) which reads: ''The Court instructs the jury that if they believe from the evidence that Donald Lee Bush came to his death as a result of the negligent driving of an automobile by Clifford Jordan, then they shall find the defendant not guilty.'' This instruction was covered by defendant's instruction No. 5, which told the jury, among other things, that before they could find the defendant guilty of involuntary manslaughter, they ''must believe from the evidence and beyond a reasonable doubt that the defendant caused the death of Donald Bush.'' This is sufficient. The court is not required to give more than one instruction on any one issue. *State* v. *Thomas,* 110 W. Va. 192, 157 S. E. 162; *State* v. *Bowles,* 109 W. Va. 174, 153 S. E. 308; *State* v. *Thomas,* 105 W. Va. 346, 143 S. E. 88; *State* v. *Beale,* 104 W. Va. 617, 141

S. E. 7, 401; *State* v. *Koski*, 101 W. Va. 477, 133 S. E. 79; *State* v. *Cook*, 81 W. Va. 686. 95 S. E. 792; *State* v. *Hunter*, 56 W. Va. 107, 48 S. E. 839.

Refusal of defendant's instruction No. 11, on the unanimity of the jury verdict, is also assigned as error. We have held in a number of cases that the accused in a criminal case is entitled to an instruction telling the jury that if anyone of their number has a reasonable doubt as to the guilt of the accused. after hearing the evidence, receiving the instructions of the court, listening to the arguments of counsel, and consulting with fellow jurors, such juror should not agree to a conviction. *State* v. *Joseph*, 100 W. Va. 213, 130 S. E. 451; *State* v. *Warrick*, 96 W. Va. 722, 123 S. E. 799; *State* v. *Edgell*, 94 W. Va. 198, 118 S. E. 144. The instruction in the instant case failed to direct them to consider the instructions of the court, arguments of counsel, or consultation among themselves. Due to such omissions, we are of opinion that the same was misleading, and would tend to bring about a disagreement on the part of the jury; hence the trial court did not err in refusing it..

Five instructions were given at the instance of the defendant which fairly and fully presented his theory of the case to the jury.

We have carefully considered the evidence. as well as the several assignments of error, and can see no reason for disturbing the verdict or judgment on the case as made. The judgment will therefore be affirmed.

*Affirmed.*